UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUZ ANAYA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Now comes the Plaintiff, LUZ ANAYA ("Plaintiff"), by her attorneys, MARIE E. CASCIARI, MATTHEW T. MALONEY, and DEBOFSKY LAW, LTD., and complaining against the Defendant, PRUDENTIAL INSURANCE COMPANY OF AMERICA ("Prudential" or "Defendant"), states as follows:

### JURISDICTION

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), and in particular, ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, involves a group long-term disability ("LTD") insurance plan underwritten and administered by Prudential for the benefit of employees of JPMorgan Chase Bank, N.A. ("JPMorgan").

2. This action may also be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

3. The ERISA statute provides a procedure for internal appeals of adverse benefit determinations at ERISA § 503 (29 U.S.C. § 1133). Those avenues of appeal have been exhausted. Therefore, this matter is ripe for judicial review.

## VENUE

4. Venue is proper in the Northern District of Illinois, Eastern Division according to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Plaintiff resides in this District.

5. Venue is also proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within this District.

## NATURE OF ACTION

6. This case seeks the payment of LTD benefits due under a group LTD insurance plan – the JPMorgan Chase Bank, N.A. Long Term Disability Insurance Plan, group plan number 502, group contract number G-50684-DE ("Plan") (a true and correct copy of the Certificate of Coverage is attached hereto and by that reference incorporated herein as "Exhibit A"). The Plan is sponsored by JPMorgan, and underwritten and administered by Prudential to provide LTD benefits to JPMorgan's employees. This action is brought as a claim for benefits under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)).

## PARTIES

7. At all times relevant hereto, Plaintiff was a resident of North Aurora, Illinois, located in Kane County, Illinois; and the events and omissions pertinent to her claim for LTD benefits took place within the Northern District of Illinois, Eastern Division.

8. At all times relevant hereto, Prudential was the underwriter and claim administrator of the Plan; and Prudential was doing business within the Northern District of Illinois, Eastern Division.

9. The Plan is an "employee welfare benefit plan," as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)). Incident to Plaintiff's employment with JPMorgan, she received coverage under the Plan as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).

## RELEVANT PLAN PROVISIONS

10. Plaintiff first ceased working due to her severe medical condition effective January 25, 2021. Plaintiff is thus eligible to receive LTD benefits starting around July 26, 2021, following her satisfaction of the Plan's 182-day elimination period, until age 65, which would be reached in June 2030. Ex. A, at 7-8. Plaintiff is entitled to receive LTD benefits in the amount of $3,390.95 per month, calculated at the buy-up rate of 60% of her pre-disability monthly earnings of $5,651.58. Ex. A, at 7. The other provisions of the Plan relevant to Plaintiff's claim provide as follows:

> **How Does Prudential Define Disability?**
> You are disabled when Prudential determines that:
> - you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and
> - you are under the *regular care* of a *doctor*; and
> - you have a 20% or more loss in your *monthly earnings* due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and
> - you are under the regular care of a doctor.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

> Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:
> - your doctors; and
> - doctors, other medical practitioners or vocational experts of our choice.
>
> When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.
>
> ***Material and Substantial Duties*** means duties that:
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified.
>
> ***Regular Occupation*** means the occupation that you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

Ex. A, at 18.

> ***Gainful Occupation*** means an occupation, including self employment, that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:
> - 80% of your ***indexed monthly earnings***, if you are working; or
> - 60% of your monthly earnings, if you are not working…
>
> **When Will You Begin to Receive Disability Payments?**
> You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

Ex. A, at 20.

## STATEMENT OF FACTS

11. JPMorgan employed Plaintiff as a full-time Private Client Banker starting September 26, 2011.

12. Approximately ten years into her employment with JPMorgan, Plaintiff ceased working effective January 25, 2021 due to various severe medical conditions including

4

fibromyalgia, osteoarthritis, polyarthritis, chronic pain and fatigue, morbid obesity, depression, anxiety, trauma and stress-related disorders, and a history of breast cancer.

13. After ceasing her employment, Plaintiff submitted a claim for short-term disability ("STD") benefits to Sedgwick, the claims administrator for JPMorgan's self-funded STD benefits program. Sedgwick approved Plaintiff's claim for STD benefits. Plaintiff started receiving STD benefits around February 1, 2021, following her satisfaction of the seven-day elimination period.

14. In mid-March 2021, Plaintiff attempted to return to work at JPMorgan, but could not sustain it due to her deteriorating medical condition.

15. After that, Plaintiff stopped working again and continued receiving STD benefits until July 29, 2021, when she satisfied the 26-week maximum STD benefits period.

16. Plaintiff thereafter submitted a claim for LTD benefits. Despite the absence of any improvement in Plaintiff's medical condition, Prudential denied her claim in a letter dated September 21, 2021. Prudential alleged that it did not deem Plaintiff to be disabled despite her receipt of STD benefits for the prior six months. Prudential explained as follows:

> In summary, give[n] your consistent reporting of ongoing symptoms, as well as consistent documentation of frequent follow-up with Dr. Kerpe, we found it is medically reasonable that you had impairment in functional capacity preventing the effective performance of work duties due to a flare-up of chronic pain condition from January 25, 2021 through March 10, 2021, largely due to lack of sustainability from reported symptoms with ongoing education, testing, and implementation of advised treatment measures.
>
> From March 11, 2021 onwards the available documentation lacks sufficient objective data that correlate with your self-reported symptoms and our review found there are no supported limitations and/or restrictions in functional capacity from a physical standpoint preventing you from performing work duties.
>
> After your March 10, 2021 office visit, you do continue with frequent follow up with Dr. Kerpe and continue to report consistently of significant pain and an inability to perform job functions. However, many of these visits are telephone visits requesting completion of FMLA paperwork and even in-person visits do not indicate physical exam finding observations that correlate with your self-reportd

    symptoms. There are no significant work-up measures or treatment changes noted after March 11, 2021 even though you continue to report persistence of symptoms.

Prudential further contended that "[t]herapy records lack detailed mental status exam findings and there is no indication that your behavioral health symptoms are of the severity that would preclude work capacity."

    17.    In addition, Defendant's decision to deny Plaintiff's LTD benefits claim was based exclusively on biased and deficient medical reviews performed by a doctor and behavioral health clinician who never even examined Plaintiff.

    18.    On March 9, 2022, Plaintiff, through the undersigned counsel, appealed Defendant's decision to deny her claim for LTD benefits. Plaintiff's appeal also contained extensive additional medical evidence further supporting her total disability including three functional capacity questionnaires completed by her treating providers. All three providers indicated that Plaintiff cannot return to any type of full-time work, let alone her sedentary and very cognitively demanding occupation as a Private Client Banker.

    19.    Nonetheless, on May 3, 2022, Prudential notified Plaintiff that it was upholding the denial of her LTD benefits claim. That time, Prudential alleged that "[b]ased on the review of the file, we find Luz Anaya does not require any medically necessary restrictions or limitations from any one condition or combination of conditions from January 25, 2021 continuously forward."

    20.    Defendant's decision to deny Plaintiff's LTD benefits appeal was based exclusively on two additional biased and deficient medical reviews performed by doctors who still never examined Plaintiff. The reviews were cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the denial of benefits while ignoring the overwhelming contrary evidence. Defendant also disregarded the written rebuttals and disagreements provided by Plaintiff's treating providers in response to the medical reviews it had prepared on appeal.

6

Defendant's claim appeal process was thus biased, self-serving, and placed financial considerations ahead of an objective and fair claim evaluation.

21. Accordingly, throughout Defendant's adjudication of Plaintiff's LTD benefits claim and appeal, it failed to meet its fiduciary obligations under ERISA to ensure an accurate claim decision, provide Plaintiff with a "full and fair review," and apply "higher-than-marketplace quality standards" as required by ERISA § 503 (29 U.S.C. § 1133), 29 C.F.R. § 2560.503-1, and the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350 (2008).

22. In addition, the evidence submitted to Defendant establishes that Plaintiff has been unable to return to any full-time work since January 25, 2021. Plaintiff has therefore met and continues to meet the Plan's definition of disability since that date due to her co-morbid medical condition including fibromyalgia, osteoarthritis, polyarthritis, chronic pain and fatigue, morbid obesity, depression, anxiety, trauma and stress-related disorders, and a history of breast cancer. Plaintiff is thereby entitled to receive all LTD benefits due from around July 26, 2021, the date she first satisfied the Plan's elimination period, to the present with interest. Such LTD benefits should continue under the Plan for as long as Plaintiff continues to meet the Plan's terms and conditions for receiving those benefits.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant, and that the Court order Defendant to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual benefits to which she is entitled under the Plan pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B. That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued before the date of judgment at an appropriate rate under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

C. That the Court order Defendant to maintain Plaintiff's LTD benefit payments for as long as she continues to meet the Plan's terms and conditions for the receipt of benefits;

D. That the Court award Plaintiff attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E. That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which she may be entitled.

Dated: July 5, 2022

Respectfully submitted,

*/s/ Marie E. Casciari*
*/s/ Matthew T. Maloney*

_____
Attorneys for Plaintiff
Luz Anaya

Marie E. Casciari
Matthew T. Maloney
DeBofsky Law, Ltd.
150 North Wacker Drive, Suite 1925
Chicago, Illinois 60606
Voice: (312) 561-4040
Fax: (312) 929-0309
Email: mcasciari@debofsky.com; mmaloney@debofsky.com